**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GREG MANCO | : |
| 51 Elmgate Road | : |
| Marlton, New Jersey 08053 | : |
| | : |
| vs. | : |
| | : |
| UNIVERSITY OF THE | : |
| SCIENCES - PHILADELPHIA | : |
| 43rd Street & Kingsessing Mall | : |
| Philadelphia, Pennsylvania 19104 | : |
| | : |
| and | : |
| | : |
| MICHAEL MONTANERO | : |
| 151 Shire Drive | : |
| Sewell, New Jersey 08080 | : |
| | : |
| and | : |
| | : |
| ELIZABETH MONTANERO | : |
| 151 Shire Drive | : |
| Sewell, New Jersey 08080 | : |

CIVIL ACTION

NO.: *04cv6002*

JURY TRIAL DEMANDED ON
ALL ISSUES

**COMPLAINT**

Plaintiff, Greg Manco (hereinafter "Plaintiff"), by through its undersigned counsel, files

the following Complaint against Defendant, University of the Sciences - Philadelphia, Mike

Montanero and Elizabeth Montanero (collectively referred to as the "Defendants"), and states as

follows:

**JURISDICTION, VENUE & PARTIES**

1.      This is an action for copyright infringement and unjust enrichment.  Plaintiff also

seeks damages for breach of contract, negligent misrepresentation, wrongful discharge,

intentional infliction of emotional distress, tortuous interference with contractual relations, defamation and civil conspiracy.

2.    Plaintiff, **Greg Manco** ("Plaintiff"), is an adult individual residing at 51 Elmgate Road, Marlton, New Jersey 08053.

3.    Defendant, **University of the Sciences - Philadelphia** ("University"), is a Pennsylvania corporation with an address at 43rd Street and Kingsessing Mall, Philadelphia, Pennsylvania 19104.

4.    Defendant, **Michael Montanero**, is an adult individual residing at 151 Shire Drive, Sewell, New Jersey, 08080, and was a former member of Defendant University's baseball team.

5.    Defendant, **Elizabeth Montanero** is an adult individual residing at 151 Shire Drive, Sewell, New Jersey, 08080, and is the mother of Defendant Michael Montanero.

6.    This action arises under the copyright laws of the United States, i.e. the Copyright Act of 1976 (the "Act"), 17 U.S.C. § 101, et seq., and state common law.

7.    Federal question jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331, 1332 and 1338.

8.    This Court has supplemental jurisdiction over the claims brought under the state common law pursuant to 28 U.S.C. § 1367(a), in that the action includes state law claims that are part of the same case or controversy as the federal claim.

9.    Venue is proper in this Court under 28 U.S.C. § 1391(b), in that Defendant, University of the Sciences - Philadelphia, has contacts with the State of New Jersey that would be sufficient to subject it to personal jurisdiction in the state of New Jersey.  All other Defendants reside in the State of New Jersey.

## GENERAL FACTUAL BACKGROUND

10.    In or about August 1998, Plaintiff was hired pursuant to an employment contract, on the tenure track, by Defendant University as an Assistant Professor of Mathematics and Statistics.

11.    Upon Plaintiff's hiring as an Assistant Professor of Mathematics and Statistics, Defendant University provided Plaintiff with the 1998 version of the Faculty Service Information ("FSI") book and an Employee Handbook. See Employee Handbook, a true and correct copy of which is attached hereto as Exhibit "A."

12.    The FSI book and Employee Handbook govern the terms of Plaintiff's employment with Defendant University, are valid and binding on both Defendant University and Plaintiff, and are part of Plaintiff's employment contract.

13.    In or about September 1998, Plaintiff was also hired by Defendant University to be an assistant coach for the men's baseball team.

14.    Plaintiff's employment contract with Defendant University was consistently extended by Defendant University until July 2004.

15.    In or about June 2001, Plaintiff successfully completed a third year pre-tenure review conducted by Plaintiff's department Chairperson, Stanley Zietz.

16.    During the third year pre-tenure review conducted by Plaintiff's department Chairperson, Stanley Zietz, recommendations were made to Plaintiff regarding requirements Plaintiff needed to complete to achieve a tenured teaching position with Defendant University.

17.    Additional recommendations regarding requirements Plaintiff needed to complete to achieve a tenured teaching position with Defendant University were made to Plaintiff during his Annual Faculty Evaluation ("AFE").

18.    On or about September 15, 2003, Plaintiff received a letter from Defendant University, notifying him of the University's offer to extend his contract regarding his position as Assistant Men's Baseball Coach for the 2003/04 baseball season.

19.    Plaintiff relied upon the recommendations made at the third year pre-tenure review, and took steps to successfully complete the recommended requirements to be eligible for tenure and promotion after the expiration of the six year probationary period.

20.    In or about October 2003, Plaintiff submitted his application for tenure and for an Associate Professor position, along with the necessary supporting documentation, to the Chairperson of the Department on Mathematics, Physics and Computer Science.

21.    In November 2003 and January 2004, Plaintiff was unanimously approved for tenure by the Department of Mathematics, Physics, and Computer Sciences and was also approved by the University's Committee for Tenure and Promotion.

22.    On or about March 18, 2004, Plaintiff was informed by the Dean of the Misher College of Arts and Sciences, Reynold Verret, that he was not recommending Plaintiff for tenure and promotion.

23.    Mr. Verret's decision to not recommend Plaintiff for tenure and promotion was in direct violation of the FSI book, Employee Handbook, the conclusions of Mr. Zietz, the Department of Mathematics, Physics, and Computer Sciences and the University's Committee for Tenure and Promotion, and in direct contradiction to the recommendations made to Plaintiff by Mr. Zietz at the third year pre-tenure review and recommendation made to Plaintiff during his AFEs.

24.     On or about April 18, 2004, e-mail communication began among current and ex-baseball players that were riddled with untrue and defamatory language concerning Plaintiff's sexual orientation, and specifically that he was a homosexual and that Plaintiff should be fired.

25.     Defendant Michael Montenaro sent defamatory e-mails to the other members of the baseball team concerning Plaintiff's sexual orientation, specifically that he was a homosexual, and suggested that the players unite to have Plaintiff and the head baseball coach fired.

26.     On or about April 20, 2004, Plaintiff was informed by Defendant University's President, Philip P. Gerbino that tenure and promotion was denied.

27.     On or about April 21, 2004, Plaintiff presented hard copies of the e-mail communications, including those by Defendant Michael Montenaro to Defendant's Assistant Athletic Director, Paul Klimitas, who presented them to Defendant's Athletic Director, Robert Morgan.

28.     Defendant's Athletic Director, Robert Morgan accused Plaintiff of "misrepresenting" himself as a member of the baseball team, and obtaining the e-mails in a "dishonest" way by "eavesdropping or snooping." Defendant Morgan also stated he was not comfortable discussing the emails and that he did not even want to acknowledge their existence.

29.     On May 10, 2004, Defendant's Athletic director, Robert Morgan summoned Plaintiff and head coach, Jack Bilbee to a meeting wherein both men were terminated from their positions with the Baseball Team. Mr. Morgan's stated reason for firing Plaintiff was that he had lost the players' respect and was based on the evaluations of the players.

30.    When Plaintiff informed Robert Morgan that he would utilize Defendant University's grievance procedure with respect to the firing, Robert Morgan threatened Plaintiff's employment as an assistant professor.

31.    Thereafter, on or about May 14, 2004, Plaintiff attempted, unsuccessfully to resolve his termination as an assistant baseball coach by meeting with the Dean of Students, Aminta Breaux.

32.    By letter dated June 1, 2004, Plaintiff was informed by the President of Defendant University, Philip P. Gerbino, that the contract for his full-time, non-tenure position as Assistant Professor of Mathematics and Statistics was extended for the 2004-05 academic year.

33.    Plaintiff accepted the non-tenure position and reserved his right to grieve the denial of tenure.

34.    Plaintiff was also hired by Defendant University to teach during the summer of 2004.

35.    On or about July 12, 2004, Plaintiff filed a formal grievance with Defendant University's Human Relations Department contesting his termination from the assistant baseball coaching position.

36.    On or about July 27, 2004, Plaintiff's employment as a non-tenured assistant professor with Defendant University was terminated, and Plaintiff was informed that he would have to withdraw his grievance concerning his termination as assistant baseball coach.

37.    Following Plaintiff's termination, Defendant, Elizabeth Montanero, stated to members of the public that Plaintiff was illegally hacking into students' e-mail accounts and that Plaintiff was gay.

38.    Defendant University was without adequate cause when it terminated Plaintiff.

## BACKGROUND TO THE COPYRIGHT CASE

39.    While employed at Defendant University, Plaintiff wrote a textbook titled, "Biostatistics I: ST 310" (the "Textbook"), which was published for him by ProQuest Publishing. Plaintiff authored the Textbook entirely on his own at his office and home computers and he did not use any of Defendant University's employees, funds or labs.  A true and correct copy of the Textbook is attached hereto as Exhibit "B."

40.    In no respect was the Textbook prepared by Plaintiff commissioned or prepared as a "work for hire."

41.    Plaintiff's Textbook is an original written work, and is thus protected under United States copyright law.

42.    Plaintiff has received United States Copyright IPN No. 142864207 for the book.

43.    Following Plaintiff's termination as an assistant professor, Defendant University informed Plaintiff that it would continue to sell and use his Textbook for the 2004-05 school year.

44.    Defendant University did not seek permission from Plaintiff to use or sell the Textbook and, in fact, Plaintiff informed Defendant University by e-mail dated August 27, 2004, that it could not use his Textbook in any manner whatsoever. See August 27, 2004 E-mail, a true and correct copy of which is attached hereto as Exhibit "C."

## COPYRIGHT INFRINGEMENT BY DEFENDANT

45.    Upon information and belief, Defendant University is selling and using Plaintiff's Textbook without Plaintiff's authorization.

46.    Defendant University is not using the Textbook in any manner allowed by the Act's "Fair Use" provision, 17 U.S.C.S. § 107, but rather has sold and is selling copies of the

Textbook to its students and is using the Textbook on a daily basis as a course textbook, all without Plaintiff's authorization.

47.    Defendant University is violating United States copyright laws by continuing to sell and use the Textbook without Plaintiff's authorization.

48.    In all material respects, the textbook Defendant University continues to sell and use is an exact copy of Plaintiff's Textbook.

49.    Pursuant to 17 U.S.C.S. § 101, "[T]he term 'copies' includes the material object, other than a phonorecord, in which the work is first fixed."

50.    Ownership of the Textbook and any copyright privileges asserted thereunder lie in the sole possession of Plaintiff.

## COUNT I
## PLAINTIFF v. DEFENDANT, UNIVERSITY OF THE SCIENCES-PHILADELPHIA
## COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 101, et seq

51.    Plaintiff incorporates the averments of paragraphs one (1) through fifty (50) above as if set forth fully herein.

52.    This cause of action for copyright infringement arises under the copyright laws of the United States, Title 17 U.S.C.S. § 101, *et seq*.

53.    Plaintiff's Textbook is an original work, protected by United States copyright law and Defendant University's sale of the Textbook to its students and its continual, daily use of the Textbook in its classes, without Plaintiff's authorization and knowing of Plaintiff's objection to said use, violates the Act, and in particular, 17 U.S.C.S. § 106(4).

54.    Upon information and belief, Defendant University sells and uses exact copies of the Textbook without Plaintiff's authorization.

55.    By the actions alleged above, Defendant University has infringed and will continue to infringe Plaintiff's copyright in his Textbook, by placing the identical book into the market, in direct competition with Plaintiff's Textbook.

56.    Upon information and belief, Defendant University's sale and use of copies of the Textbook has been willful and deliberate.

57.    On information and belief, Defendant University may continue to infringe Plaintiff's copyright in the Textbook unless restrained by this Court.

58.    Plaintiff believes that it has suffered or is likely to suffer damages, and will continue to suffer serious and substantial damages resulting from Defendant University's acts of copyright infringement, including irreparable injury for which there is no adequate remedy at law.

## COUNT II
## PLAINTIFF v. DEFENDANT UNIVERSITY OF THE SCIENCES-PHILADELPHIA
## UNJUST ENRICHMENT

59.    Plaintiff incorporates the averments of paragraphs one (1) through fifty-eight (58) above as if set forth fully herein.

60.    This cause of action arises under the common law.

61.    This Court has jurisdiction over this count pursuant to 28 U.S.C. § 1367(a).

62.    By the acts and activities complained of herein, and by virtue of Defendant University's collection of monies from the sale and use of the Textbook, Defendant University has been unjustly enriched.

## COUNT III
## PLAINTIFF v. DEFENDANT UNIVERSITY OF THE SCIENCES-PHILADELPHIA
## BREACH OF CONTRACT – TERMINATION (Assistant Professor)

63.    Plaintiff incorporates the averments of paragraphs one (1) through sixty-two (62) above as if set forth fully herein.

64.    There was a valid and binding contract between Defendant University and Plaintiff, wherein Plaintiff was hired to a non-tenure teaching position as an assistant professor for academic year 2004-2005 where Plaintiff was to be paid $52,065.00.

65.    There was a valid and binding contract between Defendant University and Plaintiff, wherein Plaintiff was hired to a non-tenure teaching position as an assistant professor for the summer of 2004, where Plaintiff was to be paid approximately $11,000.

66.    Plaintiff complied with the terms of the aforementioned contract.

67.    Defendant University breached Plaintiff's employment contract in disregarding the Employee Handbook, FSI book, University guidelines and the entire grievance procedure when it terminated Plaintiff's employment as an assistant professor of mathematics.

68.    Plaintiff has lost his teaching income and has yet to find replacement employment as a teacher.

## COUNT IV
## PLAINTIFF v. DEFENDANT UNIVERSITY OF THE SCIENCES-PHILADELPHIA
## BREACH OF CONTRACT – TERMINATION (Coach)

69.    Plaintiff incorporates the averments of paragraphs one (1) through sixty-eight (68) above as if set forth fully herein.

70.    There was a valid and binding contract between Defendant University and Plaintiff, wherein Plaintiff was hired to be the assistant baseball coach for 2003-2004, where Plaintiff was to be paid $1,750.00.

71.    Plaintiff complied with the terms of the aforementioned contract.

72.    Defendant University breached Plaintiff's employment contract in disregarding the Employee Handbook, FSI book, University guidelines and the entire grievance procedure when it terminated Plaintiff's employment as an assistant baseball coach.

73.     Although Plaintiff has obtained new employment as a baseball coach, Plaintiff is earning less money with his new coaching job.

## COUNT V
## PLAINTIFF v. DEFENDANT UNIVERSITY OF THE SCIENCES - PHILADELPHIA
## WRONGFUL DISCHARGE (Assistant Professor)

74.     Plaintiff incorporates the averments of paragraphs one (1) through seventy-three (73) above as if set forth fully herein.

75.     Defendant University violated public policy by wrongfully discharging Plaintiff from his position as assistant professor because Plaintiff attempted to exercise his rights under the FSI book and Employee Handbook to grieve his termination from Defendant University as assistant baseball coach.

## COUNT VI
## PLAINTIFF v. DEFENDANT UNIVERSITY OF THE SCIENCES-PHILADELPHIA
## BREACH OF CONTRACT -- TENURE

76.     Plaintiff incorporates the averments of paragraphs one (1) through seventy-five (75) above as if set forth fully herein.

77.     Defendant University breached Plaintiff's employment contract in disregarding the Employee Handbook, FSI book, University guidelines and the entire grievance procedure when it denied Plaintiff tenure.

78.     Plaintiff complied with the terms of the aforementioned contract.

79.     Plaintiff has lost his teaching income and has yet to find replacement employment as a teacher.

## COUNT VII
## PLAINTIFF v. DEFENDANT UNIVERSITY OF THE SCIENCES-PHILADELPHIA
## NEGLIGENT MISREPRESENTATION

11

80.    Plaintiff incorporates the averments of paragraphs one (1) through seventy-nine (79) above as if set forth fully herein.

81.    Defendant University incorrectly and negligently misrepresented to Plaintiff the requirements Plaintiff needed to fulfill to receive tenure and promotion.

82.    Defendant University knew or should have know the falsity of these representations regarding the requirements Plaintiff needed to fulfill to receive tenure and promotion.

83.    Plaintiff justifiably relied upon the recommendations made by Defendant University, and took steps to successfully complete the recommended requirements to receive tenure and promotion after the expiration of the six year probationary period.

84.    Plaintiff, to his great financial detriment, was denied tenure for reasons other than the recommended requirements communicated to Plaintiff by Defendant University.

### COUNT VIII
### PLAINTIFF v. DEFENDANTS, MICHAEL MONTANERO
### and ELIZABETH MONTANERO
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

85.    Plaintiff incorporates the averments of paragraphs one (1) through eighty-four (84) above as if set forth fully herein.

86.    There was a contractual relationship between Plaintiff and Defendant University.

87.    The Defendants, Michael and Elizabeth Montanero carelessly and negligently sought to interfere with Plaintiff's employment contract and to have Plaintiff terminated from his position as assistant baseball coach with Defendant University and as assistant professor.

88.    There existed no privilege or justification for Defendants' malicious interference with Plaintiff's employment contract with Defendant University.

89.     Defendants' unlawful scheme resulted in Plaintiff's termination from his position as assistant baseball coach and assistant professor, and not only damaged his reputation but also resulted in his loss of income and wages.

## COUNT IX
## PLAINTIFF v. DEFENDANTS, MICHAEL MONTANERO
## and ELIZABETH MONTANERO
## DEFAMATION

90.     Plaintiff incorporates the averments of paragraphs one (1) through eighty-nine (89) above as if set forth fully herein.

91.     The current and ex-baseball players, along with the Defendant University knew the comments made by Defendants Michael and Elizabeth Montanero were defamatory toward Plaintiff. The statements were of such character and nature that the recipients of the statements could understand the defamatory meaning.

92.     Defendants Michael and Elizabeth Montanero did not have any privilege to make defamatory comments regarding Plaintiff.

93.     Plaintiff's reputation was damaged by the defamatory statements and Plaintiff was subsequently terminated from his positions at the University because of same. Plaintiff has lost income and wages as a University professor and has yet to find replacement employment.

## COUNT X
## PLAINTIFF v. ALL DEFENDANTS
## NEGLIGENT/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

94.     Plaintiff incorporates the averments of paragraphs one (1) through ninety-three (93) above as if set forth fully herein.

95.    Defendants conduct, as previously stated herein, was extreme, outrageous, intentional and reckless, and proximately caused Plaintiff to suffer severe emotional distress, which no reasonable person could be expected to endure.

### COUNT XI
### PLAINTIFF v. ALL DEFENDANTS
### CIVIL CONSPIRACY

96.    Plaintiff incorporates the averments of paragraphs one (1) through ninety-five (95) above as if set forth fully herein.

97.    Defendants acted with a common purpose to terminate Plaintiff's employment, both as an assistant baseball coach and assistant professor.

98.    Defendants committed (an) overt act(s) to pursue the aforementioned common purpose.

99.    Plaintiff suffered actual legal damage to the extent his employment was terminated, reputation was damaged, and Plaintiff suffered severe emotional distress.

### INJUNCTIVE RELIEF

100.    Plaintiff incorporates the averments of paragraphs one (1) through ninety-nine (99) above as if set forth fully herein.

101.    Defendant University's conduct in selling and using the Textbook without Plaintiff's authorization, in violation of Plaintiff's exclusive copyrights, amounts to oppressive, malicious and unlawful conduct.

102.    Defendant University will not suffer any appreciable injury if the Injunction is granted because the status quo will be restored and Defendant University will merely be restrained from taking advantage of its intentional and wrongful acts and from continuing to violate Plaintiff's rights with respect to the ownership and control of the Textbook.

103.    Defendant University's wrongful conduct is actionable and Plaintiff's rights are clear as a matter of law.

104.    The grant of an injunction is not adverse to the public interest and, in fact, will further the public interest in preventing copyrights to be violated with respect to original works and preventing unlawful financial gain by those who do not have exclusive ownership rights.

105.    Plaintiff is likely to succeed on the merits of its claims.

106.    Plaintiff has no adequate remedy at law.

107.    Greater injury will be inflicted upon Plaintiff by the denial of injunctive relief, than will be inflicted upon Defendant University by granting such relief.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows:

A.    For a preliminary and permanent injunction restraining Defendant University, its officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from doing, aiding, causing or abetting any of the following:

(1)    engaging in any acts or activities directly or indirectly calculated to infringe Plaintiff's copyright in the textbook "Biostatistics I: ST 310," including, but not limited to, the sale or use of said textbook for educational instruction; and

(2)    filling or taking any orders for Defendant University's infringing textbooks, up to and including the date of final resolution of this action;

B.      That the Court enter an Order confiscating all copies of the textbook in Defendant University's possession or in the possession of students or faculty who were provided copies of the Textbook by Defendant University.

C.      Defendant University be directed and account for and to pay over to Plaintiff all damages suffered by Plaintiff as a result of Defendant University's violation of the United States copyright laws.

D.      That Defendant University be directed to pay over to Plaintiff, at Plaintiff's election, actual damages or statutory damages pursuant to the Act, 17 U.S.C. § 504.

E.      That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of Defendant University so as to prevent fraud on the Court and so as to ensure the capacity of Defendant University to pay, and the prompt payment of, any judgment entered against the University in this action.

F.      That Plaintiff be awarded damages in an amount in excess of $75,000.

G.      That Plaintiff be awarded punitive damages.

H.      That Plaintiff be awarded his reasonable attorneys' fees and the costs of this action pursuant to the Act, 17 U.S.C.S. § 505.

I.      That Plaintiff be awarded such other relief as the Court may deem just and proper.

Respectfully submitted,

ZARWIN, BAUM, DeVITO, KAPLAN,
SCHAER & TODDY, P.C.

BY: _____
     PATRICK J. WOLFE, JR., ESQUIRE
     Attorney for Plaintiff
     One Greentree Centre, Suite 201
     Marlton, NJ 08053-1536
     Ph: (215) 569-2800
     Fx: (856) 988-9207

16