IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

GREGORY V. MANCO,

                    Plaintiffs,

          v.

UNIVERSITY OF THE SCIENCES -
PHILADELPHIA, a Pennsylvania
Corporation, MICHAEL
MONTANERO, and ELIZABETH
MONTANERO,

                    Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 04-6002 (JBS)

**OPINION**

APPEARANCES:

Joseph M. Toddy, Esq.
Patrick J. Wolfe, Esq.
ZARWIN, BAUM, DEVITO, KAPLAN,
  O'DONNELL & SCHAER
1515 Market Street, Suite 1200
Philadelphia, PA 19102
     Attorneys for Plaintiff

Charles A. Ercole, Esq.
KLEHR, HARRISON, HARVEY, BRANZBURG
  & ELLERS, LLP
457 Haddonfield Road, Suite 510
Cherry Hill, NJ 08002-6603
     Attorney for Defendant University of
     the Sciences - Philadelphia

Nicholas M. Centrella, Esq.
CONRAD, O'BRIEN, GELLMAN & ROHN, P.C.
200 Lake Drive East, Suite 206
Cherry Hill, NJ 08002-1162
     Attorney for Defendants Michael Montanero
     and Elizabeth Montanero

**SIMANDLE**, District Judge:

This case, which alleges, among other claims, a cause of action for copyright infringement, arises out of the resignation by Plaintiff from his former place of employment, the University of Sciences - Philadelphia.  Presently before the Court is the motion to dismiss of Defendant University of the Sciences - Philadelphia as well as Defendants Michael and Elizabeth Montanero's motion to dismiss.  For the reasons discussed below, Defendant University of the Sciences - Philadelphia's motion will be decided as a summary judgment motion and will be granted as to the copyright claim and the remainder of Plaintiff's Complaint will be dismissed without prejudice, as the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## I.   BACKGROUND

Much of the following factual background is unnecessary for determination of the sole issues presented regarding Plaintiff's copyright claim, but this background is nevertheless supplied to give context to that claim.  Plaintiff Gregory V. Manco ("Manco"), is a former assistant professor and assistant baseball coach of the University of Sciences - Philadelphia ("University").  In August 1998, the University hired Dr. Manco as an assistant professor of mathematics and statistics for its Misher College of Arts and Sciences.  (Compl. at ¶10.)  Dr. Manco

2

received the 1998 version of the Faculty Service Information book ("FSI Book") and the Employee Handbook (collectively the "Handbook") at that time.  (<u>Id</u>. at ¶¶11-12.)  The first page of the Handbook states:

> Because the University retains the right to unilaterally make exceptions to these policies and procedures contained in the Handbook, which for faculty includes the <u>FSI</u> document, and because the University reserves the right to make unilateral changes, these policies and procedures cannot be interpreted or reasonably relied on to constitute an employment contract or any part thereof.

(Compl., Ex. A.)  In addition, the Handbook provides that employees can voluntarily resign, or be terminated with or without cause.  (<u>Id</u>. at § III.26.)  The University identifies reasons for termination for cause to include, although not limited to, "actions dangerous to the employee or other employees, dishonesty, disorderly conduct, . . . neglect of duty, incompetence or insubordination, . . . ."  (<u>Id</u>.)

In September 1998, the University also hired Dr. Manco to be the assistant coach of the men's baseball team.  (Compl. at ¶13.)  From 1998 through 2004, the University continued to employ Dr. Manco as an assistant professor and assistant baseball coach.  In fact, on or about September 15, 2003, Dr. Manco received a letter from Defendant University, notifying him of the University's offer to extend his employment in his position as Assistant Men's Baseball Coach for the 2003-04 baseball season.  (<u>Id</u>. at ¶18).

3

By letter dated June 1, 2004, Plaintiff was informed by the President of the University, Phillip P. Gerbino, that his employment in his full-time, non-tenure position as Assistant Professor of Mathematics and Statistics was extended for the 2004-05 academic year.

In or about October 2003, Dr. Manco submitted his application for tenure and for an Associate Professor position, along with the necessary supporting documentation, to the Chairperson of the Department of Mathematics, Physics and Computer Sciences. (Id. at ¶20.) In November 2003 and January 2004, Dr. Manco was unanimously approved for tenure by the Department of Mathematics, Physics and Computer Sciences and was also approved by the University's Committee for Tenure and Promotion. (Id. at ¶21.) On March 17, 2004, however, Dr. Manco was informed by the Dean of the Misher College of Arts and Sciences that he was not recommending Dr. Manco for tenure and promotion. (Id. at ¶22.)

On May 10, 2004, the University's athletic director terminated Dr. Manco and Jack Bilbee as the assistant coach and head coach of the baseball team, respectively, after receiving complaints from players and their families. The athletic director explained that both men were being terminated based upon the players' evaluations and because they had lost the players' respect. (Id. at ¶29.) Dr. Manco tried to resolve his

4

termination by meeting with the Dean of Students and also filed a formal grievance with the University's Human Relations Department on July 12, 2004.  (<u>Id</u>. at ¶¶31, 35.)

On July 27, 2004, Dr. Manco met with Barbara J. Byrne, Vice President of Academic Affairs; Dr. Stanley Zietz, Chairperson of the Mathematics Department for Misher College of Arts and Sciences; Dr. Reynold Verret, Dean of Misher College of Arts and Sciences; and Dr. Bernard Brunner, Professor in the Department of Mathematics, Physics and Computer Science.  (Affidavit of Barbara Byrne, ¶10.)  Byrne began the meeting by explaining to Dr. Manco that students had provided the University with "incriminating" information about his activities in his capacity as the assistant coach of the men's baseball team.  (<u>Id</u>. at ¶11.)  Specifically, while he was in Florida with the baseball team on University business in March 2004, Dr. Manco took four students, in a University-rented vehicle, to a nightclub and permitted two underage students to consume alcoholic beverages.  (<u>Id</u>.)  Dr. Manco admitted the allegations and confirmed that he had known that two of the four students were under the legal drinking age. (<u>Id</u>. at ¶12.)  Dr. Manco admitted that, although he saw the underage students with drinks in their hands, he did not tell the students that they had to leave immediately and instead, explained the situation with the fact that they were only at the nightclub for an hour and a half.  (<u>Id</u>.)  Dr. Manco also stated

that he knew the students needed to have fake IDs to drink.  (<u>Id</u>. at ¶13.)  Dr. Manco further confessed that he did not notify the head coach of the incident, (<u>id</u>. at ¶15.), although he acknowledged that he should have.  (<u>Id</u>. at ¶17.)

Byrne explained that accompanying underage students to a nightclub is cause for termination.  (<u>Id</u>. at ¶18.)  Nevertheless, Byrne offered Dr. Manco the opportunity either to resign or be terminated for cause and presented him with two letters: one of resignation and one of termination for cause.  (<u>Id</u>. at ¶22.)  Dr. Manco was given until the end of the day to consult with his attorney and accept or reject the offer.  (<u>Id</u>. at ¶26.)  At the end of the day, Dr. Manco returned to Vice President Byrne's office and advised that he had spoken with his counsel and would agree to resign if certain changes could be made to the resignation letter.[1]  (<u>Id</u>.)  The University agreed to the changes.  (<u>Id</u>. at ¶28.)  Thereafter, Dr. Manco and Vice President Byrne, on behalf of the University, executed the resignation letter.  (Def.'s Ex. C, July 27, 2004 Resignation Letter.)

On December 10, 2004, Dr. Manco instituted this action against the University, a student and former baseball player,

---

[1]These requested changes apparently had to do with Plaintiff's ability, in the future, to return to the University's campus should he become employed as a baseball coach with another university and that school was playing baseball against the University as well as clarification of from whom he could obtain letters of recommendation.

Michael Montanero, and his mother, Elizabeth Montanero
(collectively, the "Montaneros"), by filing for a temporary
restraining order and motion for preliminary injunction,[2] and a
verified Complaint.  The Complaint asserts eleven causes of
action, only one of which arises under federal law: copyright
infringement (Count I), which is alleged only against the
University.  All remaining causes arise only under state law,
namely: unjust enrichment (Count II); breach of contract for
termination as assistant professor (Count III); breach of
contract for termination as assistant baseball coach (Count IV);
wrongful discharge as assistant professor (Count V); breach of
contract for failure to promote tenured professor position (Count
VI); negligent misrepresentation (Count VII); tortious
interference with contractual relations (Count VIII); defamation
(Count IX); negligent/intentional infliction of emotional
distress (Count X); and civil conspiracy (Count XI).  Counts I-
VII, X and XI are brought against the University; Counts VIII-XI
are alleged against the Montaneros.  Dr. Manco seeks judgment for
actual and statutory damages for copyright infringement,

---

[2]By letter dated December 16, 2004, counsel for Dr. Manco
advised the Court that he was withdrawing the application for
injunction without prejudice after counsel for the University
notified him that it had no intention of using the alleged
copyrighted textbook that was the primary focus of the injunction
proceedings.

compensatory damages in excess of $75,000, punitive damages and
costs, including counsel fees.

This Court's jurisdiction would arise, if at all, only under
28 U.S.C. § 1338 with respect to Plaintiff's claim of copyright
infringement as alleged in Count I against the University.
Defendant University of the Sciences - Philadelphia has filed a
motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[3]
Defendants Michael and Elizabeth Montanero similarly move
pursuant to Rule 12(b)(1).  Oral argument was held on April 18,
2005, after which the Court entered an Order permitting limited
discovery with respect to Plaintiff's copyright infringement
claim and set a schedule for supplemental briefing.  That
discovery was conducted and the briefing is now complete and the
instant motion, having been converted to a summary judgment
motion, is ripe for adjudication.

## II.  DISCUSSION

A.  Subject Matter Jurisdiction

This Court has subject matter jurisdiction over Plaintiff's
copyright claim in Count I pursuant to 28 U.S.C. § 1338.  The

_____

[3]Alternatively, if the Court decides not to dismiss the
Complaint for failure to state a claim for which relief may be
granted, the University requests that Dr. Manco be required to
plead a more definite statement pursuant to Fed. R. Civ. P. 12(e)
with respect to his claims for unjust enrichment, breach of
contract, wrongful discharge, negligent misrepresentation,
negligent and intentional infliction of emotional distress and
civil conspiracy.

Court must consider below whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 with respect to Counts II through XI.  Because Plaintiff is a citizen of New Jersey as are Defendants Michael and Elizabeth Montanero, complete diversity does not exist and, even putting aside the question of whether the amount in controversy requirement is satisfied, diversity jurisdiction thus provides no independent basis for this Court to hear the case.

B.   Count I (Copyright Infringement)

Plaintiff's sole federal claim which, if proper, would confer jurisdiction upon this Court, is the copyright infringement cause of action set forth in Count I of Plaintiff's Complaint.  While employed at Defendant University, Dr. Manco authored a textbook titled, Biostatistics I: ST 310.  (Compl. at ¶39.)  Plaintiff alleges that following his termination as an assistant professor, Defendant University informed him that it would continue to sell and use his textbook for the 2004-05 school year.  (Id. at ¶43.)  Plaintiff contends that Defendant University did not seek his permission to use or sell this book yet is doing so without Plaintiff's authorization.  (Id. at ¶¶44-45.)

The University seeks to dismiss Plaintiff's copyright infringement claim on two grounds: first, that Plaintiff fails to state a claim for copyright infringement under 17 U.S.C. § 501;

and second, that Plaintiff's copyright infringement claim is barred by the first sale doctrine.  Because the parties have referred to material facts outside the pleadings and documents referenced in the pleadings, this motion was converted, pursuant to the final sentence of Rule 12(b), to a motion for summary judgment under Rule 56.

    1.  <u>Standard of Review</u>

      A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A district court must accept any and all reasonable inferences derived from those facts.  <u>Unger v. Nat'l Residents Corp. v. Exxon Co., U.S.A.</u>, 761 F. Supp. 1100, 1107 (D.N.J. 1991); <u>Gutman v. Howard Sav. Bank</u>, 748 F. Supp. 254, 260 (D.N.J. 1990).  Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff.  <u>See</u> <u>Scheuer</u>, 416 U.S. at 236; <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  Where, however, matters outside the pleadings are referred to by the parties in addressing the motion, as in the present case, Rule 12(b) also provides that the motion may be converted to a motion for summary judgment and decided under Rule 56, Fed. R.

Civ. P., which has occurred here following supplemental factual discovery, briefing and oral argument.

Under the well-established standards for summary judgment, summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "[T]he nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255).

The non-moving party "may not rest upon the mere allegations or denials of" its pleading in order to show the existence of a genuine issue. Fed. R. Civ. P. 56(e). Plaintiff must do more than rely only "upon bare assertions, conclusory allegations or

suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985),
cert. denied, 474 U.S. 1010 (1985) (citation omitted); see
Liberty Lobby, 477 U.S. at 249-50.  Thus, if the plaintiff's
evidence is a mere scintilla or is "not significantly probative,"
the court may grant summary judgment.  Liberty Lobby, 477 U.S. at
249-50; Country Floors, 930 F.2d at 1061-62.

    2.   Plaintiff's Claim under 17 U.S.C. § 501

    To establish a prima facie case for copyright infringement,
pursuant to 17 U.S.C. § 501, Dr. Manco must prove that he is the
owner of a valid copyright and that the University copied the
copyrighted material.  Ford Motor Co. v. Summit Motor Products,
Inc., 930 F.2d 277, 290 (3d Cir. 1991) (citing Masquerade
Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 667 (3d Cir.
1990)).  "Copying" means infringing upon a copyright owners'
exclusive rights.  17 U.S.C. § 106.

    In his Complaint, Plaintiff alleges that the University
infringed his copyrighted textbook, Biostatistics I: ST 310
("Textbook"), and will continue to infringe his copyright by
selling and using exact copies of the Textbook without
authorization.  (Compl. at ¶¶54-55.)  Although Dr. Manco has
produced evidence of a federal copyright registration of his
Textbook, (see Pl.'s Ex. B-3), that registration was not filed
until September 10, 2004, which was after Plaintiff consented to
the sale and distribution of his Textbook by the Bookstore,

following publication by ProQuest/XanEdu ("ProQuest"), and the Textbooks were sold to students at the University. (Def.'s Supp. Ex. A.)

More importantly, however, there is no evidence of direct or indirect copying by the University. The Complaint itself, as evidenced by paragraph thirty-nine, admits that ProQuest lawfully published copies of his Textbook and distributed those copies under Dr. Manco's express authority and consent to the Bookstore. (Compl. at ¶39.) Moreover, Dr. Manco's deposition testimony confirms this point. Plaintiff admits that, in June 2004, he consented to the Bookstore ordering and copying his Textbook when he asked a secretary in the University's Math Department to order his Textbook or gave her a course adoption form. (Pl.'s Supp. Ex. D, Deposition of Gregory V. Manco at 26:4-11, 31:9-12.) Dr. Manco also admits that he consented to and was aware that ProQuest was the company that was duplicating his Textbook to be sold by the Bookstore. (Id. at 94:17-20, 95:9-16.)

Michael Ball, as the corporate designee of Matthews Medical and Scientific Books, Inc., confirmed at his deposition that the Bookstore ordered seventy-five copies of Dr. Manco's Textbook on June 21, 2004 and believed that it had Plaintiff's consent to do so. (Pl.'s Supp. Ex. C, Deposition of Michael Ball at 48:16-49:14, 130:17-22.) The Bookstore received the seventy-five copies of the Textbook it had ordered on August 25, 2004. (Id.

13

at 73:6-74:18, 130:23-131:13; <u>see also</u> Def.'s Supp. Ex. B.)  From

August 28, 2004 through September 1, 2004, the Bookstore sold

thirty-seven copies of the Textbook.  (Def.'s Supp. Ex. A; Pl.'s

Supp. Ex. C, Ball Depo. at 58:22-61:21, 131:11-13, 132:7-19.)

ProQuest sent the Bookstore an invoice for the copying on

September 2, 2004, which the Bookstore paid in October of that

year.  (Def.'s Supp. Ex. B; Pl.'s Supp. Ex. C, Ball Depo. at

132:20-133:23, 135:10-14.)  At no time did Dr. Manco notify the

Bookstore that he was revoking his authority or consent to sell

the Textbook.  (Pl.'s Supp. Ex. C, Ball Depo. at 135:21-136:4;

Pl.'s Supp. Ex. D, Manco Depo. at 48:21-49:15.)  Thus, the record

supports the University's argument that the copies of Dr. Manco's

Textbook sold by the Bookstore were lawfully and legitimately

made.

Moreover, a claim for indirect infringement cannot stand.

The record supports Defendant's contention that the University is

not, and never has been, in control of the Bookstore's operations

with respect to the ordering, sale and distribution of textbooks.

(Pl.'s Supp. Ex. C, Ball Depo. at 93:20-23; Pl.'s Supp. Ex. B,

Deposition of Eileen McGovern at 40:5-8, 48:17-49:2, 59:17-24,

61:16-62:15.)  The University and the Bookstore are, in fact,

separate corporate and legal entities, (Pl.'s Supp. Ex. C, Ball

Depo. at 7:18-9, 11:12-14, 92:16-18, 92:24-25, 93:20-23; Pl.'s

Sup. Ex. B, McGovern Depo. at 59:9-13, 61:4-10), and the only

real relationship between the two is a Bookstore Agreement, in which the Bookstore leases space on the University's campus for an annual fee and the University, in turn, grants the Bookstore the exclusive right to sell books and merchandise on the University's campus.  (Def.'s Supp. Ex. C; Pl.'s Supp. Ex. B, McGovern Depo. at 59:11-16.)  The Bookstore's employees are employed by the Bookstore, not the University.  (Pl.'s Supp. Ex. B, McGovern Depo. at 61:11-15.)  At her deposition, Eileen McGovern, the University's corporate designee and the only employee designated by the University to deal with the Bookstore, testified that she is responsible for ensuring that the Bookstore complies with the University's standards related to the use of the University's logo and name on merchandise sold by the Bookstore but is not involved in any other way with the Bookstore's business.  (Id. at 9:7-25, 17:14-21, 59:17-24.)  Moreover, the University is not involved in the daily operations of the Bookstore, including ordering, canceling orders or removing Textbooks from the Bookstore's shelves.  (Pl.'s Supp. Ex. C, Ball Depo. at 92:19-25, 93:20-98:4; Pl.'s Supp. Ex. B, McGovern Depo. at 40:5-8, 48:17-49:2, 59:17-24, 61:16-62:15.)  Upon these uncontested facts, this record evidence simply cannot sustain a claim for indirect infringement either.  Plaintiff's copyright claim therefore lacks the evidentiary support necessary for a prima facie case of infringement.

15

3.   <u>First Sale Doctrine</u>

In addition, even if a prima facie case of infringement were arguably present, Plaintiff's claim is further defeated by the first sale doctrine.  The Copyright Act grants copyright owners exclusive rights to reproduce the copyrighted work, prepare derivative works based upon the copyright work, distribute copies of the copyright and to display the copyrighted work.  17 U.S.C. § 106.  The copyright holder's distribution rights, however, are not absolute.

The first sale doctrine, codified at 17 U.S.C. § 109(a), allows an individual who legally acquired a lawfully made copy of a copyrighted work to sell or otherwise transfer that particular copy as he or she wishes.  <u>Columbia Pictures v. Aveco, Inc.</u>, 800 F.2d 59, 63-64 (3d Cir. 1986); <u>Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.</u>, 210 F. Supp. 2d 552, 559-60 (D.N.J. 2002), <u>aff'd</u>, 342 F.3d 191 (3d Cir. 2003).  After the first sale of a copy, the copyright holder has no control over the occurrence or conditions of further sales of that specific copy.  <u>Sebastian International, Inc. v. Consumer Contracts (PTY) Ltd.</u>, 847 F.2d 1093, 1096 (3d Cir. 1988).  This doctrine applies only to copies lawfully made.  <u>United States v. Moore</u>, 604 F.2d 1228 (9th Cir. 1979).

Plaintiff maintains that the first sale doctrine does not apply in this case because he did not have any contractual

16

relationship or agreement with ProQuest and never transferred material ownership to ProQuest.  (See Pl.'s Supp. Ex. D, Manco Depo. at 51-53.)  Instead, Dr. Manco alleges that he dealt only with the University in connection with the publication of his Textbook, not with ProQuest or the Bookstore.  (Id. at 18-20, 44:4-18, 48:25-53:23.)  The record evidence, however, does not support this contention.

As noted above, the Bookstore is solely responsible for ordering textbooks sold there.  (Pl.'s Supp. Ex. C, Ball Depo. at 93:20-23; Pl.'s Supp. Ex. B, McGovern Depo. at 40:5-8, 48:17-49:2, 59:17-24, 61:16-62:15.)  Pursuant to the Bookstore Agreement, faculty members order textbooks by submitting order forms, by email or by telephone.  (Pl.'s Supp. Ex. C, Ball Depo. at 93:20-98:4; Pl.'s Supp. Ex. B, McGovern Depo. at 33:11-34:3.)  Throughout each semester, the Bookstore sends several emails to faculty to advise of the deadline for ordering textbooks and to request that faculty advise the Bookstore of the required Textbook and the number of textbooks for their classes.  (Pl.'s Supp. Ex. C, Ball Depo. at 60:9-20, 100:9-101:25; Pl.'s Supp. Ex. B, McGovern Depo. at 60:11-20, 61:1-13; Pl.'s Supp. Ex. D, Manco Depo. at 99:4-20.)  In autumn of 2004, Dr. Manco's Textbook was a required text for all sections of statistics, including sessions taught by other professors.  (Pl.'s Supp. Ex. D, Manco Depo. at 25:2-18, 31:2-32:5, 100:13-24.)  As the author of the Textbook,

17

Dr. Manco was responsible for providing the Bookstore with consent to copy this material for all sections of the course, which he did.  (Pl.'s Supp. Ex. C, Ball Depo. at 98:5-8; Pl.'s Supp. Ex. B, McGovern Depo. at 34:16-35:1, 60:21-25; Pl.'s Supp. Ex. D, Manco Depo. at 31:2-32:5.)

On August 6, 2001, Dr. Manco signed a Course Packet Order Form with ProQuest's predecessor, Campus Custom Publishing, Inc., to publish the first edition of his Textbook.  (Def.'s Supp. Ex. D.)  This form specifically states that this is the first time the Textbook is being published and indicates that the Textbook would be sold at the Bookstore.  (Id.)  Thereafter, over the course of a four year period, Plaintiff repeatedly consented to the publication and distribution of his Textbook by the Bookstore and/or ProQuest and communicated directly with the Bookstore.  (See Def.'s Supp. Exs. D-H; Pl.'s Supp. Ex. D, Manco Depo. at 18-20, 44-52, 99:4-20.)

In 2003, Plaintiff signed and submitted two course adoption forms to the Bookstore to order his Textbook for the summer and autumn semesters of that year.  (Def.'s Supp. Exs. E-F.)  That same year, Dr. Manco revised his Textbook, and in July 2003, delivered a new edition of his Textbook to the Bookstore, which was then sent to ProQuest for publication.  (Def.'s Supp. Ex. G; Pl.'s Supp. Ex. C, Ball Depo. at 46:8-16, 47l; Pl.'s Supp. Ex. D, Manco Depo. at 22:5, 24:5-13.)

Plaintiff also communicated with the Bookstore orally and by email, authorizing the publication and distribution of the Textbook by ProQuest and the Bookstore. (Def.'s Supp. Ex. H; Pl.'s Supp. Ex. D, Manco Depo. at 27:2-30:8.) In late 2003 and in 2004, Dr. Manco did not submit course adoption order forms to publish his Textbook for the spring and fall 2004 semesters. (Def.'s Supp. Ex. C, Ball Depo. at 47:16-18.) Rather, on November 17, 2003, Dr. Manco sent an email to the Bookstore requesting that it order 175 Textbooks for sale at the Bookstore for the spring semester of 2004. (Def.'s Supp. Ex. H; Pl.'s Supp. Ex. D, Manco Depo. at 27:2-30:8.) Dr. Manco did not copy anyone from the University on this email.

On or before June 21, 2004, Dr. Manco requested a secretary in the University's Math Department to contact the Bookstore and have seventy-five copies of his Textbook published for the autumn 2004 semester, with the understanding that the Bookstore was going to distribute the Textbook. (Pl.'s Supp. Ex. C, Ball Depo. at 37-40; Pl.'s Supp. Ex. D, Manco Depo. at 60:21-25.) The Bookstore thereafter ordered seventy-five copies of the Textbook from ProQuest on June 21, 2004. (Def.'s Supp. Ex. I; Pl.'s Supp. Ex. C, Ball Depo. at 48:16-49:3.) The evidence thus demonstrates that Dr. Manco transferred title of his Textbook to the Bookstore, who paid ProQuest to provide seventy-five copies of his Textbook. While Plaintiff testified at his deposition that

19

he consented to the Bookstore copying his Textbook with the assumption that the Bookstore is part of the University and that his consent was conditioned upon his continued employment with the University, (see Pl.'s Supp. Ex. D, Manco Depo. at 31:2-32:5, 51:14-52:2), nothing in the record supports the actual existence of such a condition.

On August 24, 2004, having previously resigned from the University, Plaintiff maintains that, in an email to the same secretary that ordered his Textbook in June, he notified the University that he did not approve of the University selling or using his Textbook. (Def.'s Supp. Ex. J.)  This email, however, makes no demand that the Textbook not be sold and does not state that Dr. Manco was revoking his consent to publication.  Instead, Plaintiff requests compensation in the nature of a royalty payment by the University for the Bookstore to distribute the Textbook.  (Id.)  At his deposition, moreover, Dr. Manco testified that he meant that his Textbook could not be used or distributed by the Bookstore unless the University paid him for it.  (Def.'s Supp. Ex. D, Manco Depo. at 53.)  Neither the Bookstore nor the University believed that Dr. Manco was revoking his consent or instructing anyone to stop selling or using his Textbook, believing instead that Plaintiff was trying to negotiate the payment of a royalty for the Bookstore's sale of his Textbook.  (Pl.'s Supp. Ex. B, McGovern Depo. at 38:7-8,

39:18-40:23, 43:13-45:22, 53:19-54:10; Pl.'s Supp. Ex. C, Ball Depo. at 146-151; Pl.'s Supp. Ex. D, Manco Depo. at 60:3-70:3.) Other than the August 24, 2004 email, Dr. Manco never sought to place a condition upon the sale of his Textbook until he filed the Complaint in this matter.  (Pl.'s Supp. Ex. D, Manco Depo. at 66:13-21.)  The evidence demonstrates that Plaintiff never made any objection whatsoever to the Bookstore, or to ProQuest, regarding the sale of his Textbook or communicated that he was revoking his consent to the Bookstore selling the seventy-five copies of his Textbook.  (Id. at 70:4-19.)

Thus, for these reasons, Plaintiff's copyright infringement claim (Count I) must be dismissed and summary judgment thereon will be entered in favor of the University.  Having dismissed Plaintiff's federal claim, the only remaining causes of action are those that sound in state law, and diversity jurisdiction is absent.  This Court thus declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining state law claims.  A "district court[] may decline to exercise supplemental jurisdiction over a claim under subsection (a) if the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); see also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (explaining that in interests of judicial economy and comity, if federal causes of action are dismissed before trial, state claims should

also be dismissed).  Indeed, it is well-established that a federal court normally will not exercise supplemental jurisdiction over state law claims after it has dismissed the claims upon which federal jurisdiction was premised.  <u>See</u>, <u>e.g.</u>, <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988)(supplemental jurisdictional ordinarily declined where federal claim dismissed before trial).  Here, these employment-related state law claims arise from the circumstances of Plaintiff's allegations of wrongful discharge and failure to promote, rather than from copyright infringement, and the Montanero Defendants are named solely in the state law claims.

## III.  <u>CONCLUSION</u>

For the reasons discussed above, Defendant University's motion to dismiss will be granted as to Plaintiff's copyright infringement claim.  In addition, the Court declines to exercise supplemental jurisdiction over the remainder of Plaintiff's Complaint, which is therefore dismissed without prejudice.  The motion to dismiss of Defendants Michael Montanero and Elizabeth Montanero is dismissed as moot.  The accompanying Order will be entered.


 **July 29, 2005**                          **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         United States District Judge

22